IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| THE CHARTER OAK FIRE INSURANCE COMPANY and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,<br><br>    Plaintiffs,<br><br>vs.<br><br>MATTHEW NELSON et al.,<br><br>    Defendants. | Case No. 13-6085-CV-SJ-ODS |

ORDER AND OPINION DENYING DEFENDANT MATTHEW NELSON'S MOTION
FOR SUMMARY JUDGMENT AND GRANTING
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Pending is Plaintiffs' Motion for Summary Judgment. Defendant Matthew Nelson's Suggestions in Opposition ask that summary judgment be granted in his favor. Plaintiffs' motion is granted as to both Defendants. Nelson's motion is denied.

I. BACKGROUND

Plaintiffs have filed this declaratory judgment action against
1. Jane Doe, by and through her Parent and Next Friend, Mary Doe, and
2. Matthew Nelson.

Mary Doe and John Doe are Jane Doe's parents; the three of them are referred to collectively as "the Does." John Doe is not a defendant in this suit. Mary Doe is sued only in her capacity as Jane Doe's Next Friend, so she is not a defendant in her individual capacity. Plaintiffs seek a declaration that they are not obligated to (1) defend Nelson in suit filed against him by the Does in Jackson County Circuit Court or (2) indemnify him against damages sought by Jane Doe.

The Does' suit alleges Nelson was a second grade teacher in the Grain Valley School District ("the School District") and during the 2011-12 school year Jane Doe was one of Nelson's students. As will be discussed more fully below, the Does allege Nelson engaged in various improprieties with Jane Doe. Nelson pleaded guilty in state court to child molestation, statutory sodomy and attempted child molestation; these charges arose from his conduct regarding students other than Jane Doe. The suit asserts claims against Nelson, the School District, and various officials from the School District.

Plaintiffs issued insurance policies to the District that insure the District and its employees – including Nelson – against certain types of claims. Plaintiffs allege that while Nelson is an employee of the District, the Does' claims are not covered and they therefore do not owe him a duty (1) to defend him from those claims or (2) to indemnify him against those claims.

## A. The Underlying State Court Suit

The operative pleading in the state court suit is the Does' Third Amended Petition. As relevant to this suit, paragraph 22 of the General Allegations avers that during the 2011-12 school year Nelson

> began an ongoing, repeated and continuous practice of fondling, holding, kissing and otherwise inappropriately touching and assaulting Plaintiff Jane Doe, including such specific acts as touching her private area, touching her legs[ ] and inner thighs, and requiring Plaintiff Jane Doe to stand between his legs while he sat at his desk in the classroom, and in other locations on school property and elsewhere during the course and scope of his employment and work as her teacher.

Paragraph 23 alleges Jane Doe "had no choice but to be subjected to [Nelson's] repeated and ongoing physical and sexual assaults." Other General Allegations, such as paragraph 33, also describe Nelson's conduct with words and phrases such as "assault" or "sexual assault."

The Third Amended Petition contains seventeen counts, but Count XVII does not assert a cause of action and only seeks punitive damages for all the other counts.

2

Disregarding Count XVII, Nelson is a defendant in ten counts. Each of the individual counts begins by reincorporating all previous allegations, including paragraphs 22 and 23. The counts naming Nelson as a defendant, and relevant allegations contained therein, are as follows:

**Count III** – Negligence per se, alleging Nelson acted negligently when he violated state law (section 167.117 of the Revised Missouri Statutes) by failing to report his own "prior sexual abuse" of other children, which led to his subsequent conduct (as described in the General Allegations) involving Jane Doe.

**Count V** – Negligence, alleging Nelson had a duty to protect students (including Jane Doe) from unreasonable risk of harm. Count V alleges Nelson breached this duty by "negligently and carelessly touching Jane Doe in an inappropriate and sexual manner;" "negligently and carelessly providing Jane Doe with items in exchange for her trust;" and "negligently and carelessly committing other acts and omissions as yet unknown to Plaintiffs."

**Count VI** – Negligent infliction of emotional distress, alleging that the negligent acts specified in Count V caused Jane Doe to "suffer[ ] medically diagnosable and medically significant emotional distress." The relationship between Count V and Count VI is made clear in paragraphs 84 and 85, which specifically allege that this count depends on the duties and breaches contained in Count V. The relationship between Counts V and VI and the allegations of sexual misconduct is established not only by the reincorporation of paragraphs 22 and 23, but by the allegation in paragraph 86 that Nelson "knew or should have known that continuous sexual abuse by a teacher involved an unreasonable risk of causing emotional distress for Plaintiff Jane Doe."

**Count VII** – Assault and battery, alleging Nelson "attempted and succeed[ed] in causing offensive and/or harmful physical contact" with Jane Doe.

**Count VIII** – Childhood sexual abuse brought pursuant to section 537.046 of the Revised Missouri Statutes. This statute creates a cause of action for anyone under the age of eighteen who is the victim of an act that violates various criminal provisions. In this case, Count VIII specifies that it is based on section 566.090, which defines the crime of first degree sexual misconduct as "purposely subject[ing] another person to sexual contact without that person's consent." Paragraph 102 alleges Nelson

3

"intentionally engaged in unpermitted sexual contact with Plaintiff Jane Doe in violation of Mo. Rev. Stat. 566.090."

**Count IX** – Intentional infliction of emotional distress, based on all of the prior acts alleged in the Third Amended Petition. Moreover, Paragraph 108 alleges "Nelson's conduct was intended to cause Plaintiff Jane Doe severe emotional distress, or reflected a reckless indifference to the likelihood that it would cause Jane Doe severe emotional distress."

**Count X** – Negligent infliction of emotional distress, brought by Mary Doe and John Doe. Paragraph 115 alleges Nelson owed a duty to the parents to protect their child "from unreasonable risks of harm" and Paragraph 116 alleges that he breached this duty "when he sexually abused their daughter."

**Count XI** – Violation of Title IX of the Education Amendments of 1972. In addition to incorporating all prior allegations, Count IX alleges (in Paragraph 122) that "Nelson's abuse of Jane Doe as set forth above is prohibited by Title IX."

**Count XII** – "State Created Danger." This count alleges that because the State provides a free public education, Jane Doe had a property right in that education. Count XII further alleges she possessed a Due Process right "to personal security, bodily integrity . . . and to be secure and to be left alone . . . ." The remaining allegations focus on the ways in which defendants other than Nelson violated Jane Doe's constitutional rights, but it can be inferred that by including Nelson in Count XII the Does are alleging Nelson violated Jane Doe's constitutional rights by sexually abusing her. In fact several paragraphs (notably paragraphs 134, 135, 136, and 138) describe Nelson's conduct as "abuse" or "sexual abuse."

**Count XVI** – Sexual Harassment in violation of the Missouri Human Rights Act. Count XVI not only reincorporates paragraphs 22 and 23, but paragraph 192 alleges that Jane Doe "was subjected to sexual harassment and sexual assault and battery by a teacher while attending school, during school hours and on school premises." Paragraph 192 also alleges that she was "taken from her normal place in the classroom and . . . placed on or in close proximity to [Nelson's] lap to be fondled and / or [sic] abused   . . . ." The following paragraph also discusses the "sexual harassment, assault and battery" that Jane Doe suffered.

4

## B. The Insurance Policies

Between them, Plaintiffs issued four insurance policies to the District that were in effect at various times between July 1, 2010 and July 1, 2012. Two of them were Commercial General Liability Policies, both of which were issued by Charter Oak. The other two were Excess Liability Policies (or Umbrella policies) issued by Travelers. The effective dates of the polices are:

- Commercial General Liability ("CGL") Policy issued by Charter Oak and effective from July 1, 2010 to July 1, 2011
- Commercial Excess Liability Policy ("Umbrella") issued by Travelers effective from June 1, 2010 to June 1, 2011
- CGL Policy issued by Charter Oak effective from June 1, 2011 to June 1, 2012
- Umbrella issued by Travelers effective from July 1, 2011 to July 1, 2012

The policies are similar in all respects relevant to this lawsuit, so the Court will describe the language without ascribing it to any particular policy

### *1. The CGL Policies*

The CGL Policies are issued to the District, but they provide coverage to the District's employees – including Nelson. Charter Oak agrees to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and also to "defend the insured against any 'suit' seeking those damages." Plaintiffs do not dispute that the Does' suit seeks damages for "bodily damage" or "property damage" as those terms are defined in the CGL Policies.

The CGL Policies contain certain exclusions. The following exclusions are relevant to this suit:

- for injury or damage "expected or intended from the standpoint of the insured."
- for "'Personal and advertising injury' caused by . . . the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'"

- For "'Personal and advertising injury'" arising out of a criminal act committed by or at the direction of the insured."[1]

The CGL Policies contain limited coverage for abuse or molestation. However, excluded from this limited coverage are any injuries "arising out of an 'abuse or molestation offense' committed at the direction of the insured or that the insured knowingly allowed to happen." The phrase "abuse or molestation offense" is defined to mean one or more acts of "abuse or molestation," which in turn is defined (as relevant to this case) as "any illegal or offensive physical act or contact committed by any 'perpetrator' against any person who is [u]nder 18 years of age." A "perpetrator" is the person or persons "who actually or allegedly commit any illegal or offensive physical act or contact."

Also excluded from the limited abuse or molestation coverage are any injuries arising out of "sexual harassment," which is defined to mean "illegal or offensive non-physical acts, or verbal comments, of a sexual nature." The net effect of the abuse or molestation exclusion is to provide the possibility of coverage to insureds for abuse or molestation committed by another person, while excluding coverage for an insured's own actual or alleged acts of abuse or molestation.

## *2. The Umbrella Policies*

Both Umbrella Policies exclude coverage for "'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured." The first Umbrella Policy also contains an Abuse or Molestation Exclusion that is similar in all respects to the specific abuse and molestation exclusion contained in the CGL Policies. It also specifies that it does not apply to "'Bodily injury' or 'personal injury' arising out of any act of 'abuse or molestation'" and defines "abuse or molestation" as "any illegal offensive physical act

---

[1]"Personal and advertising injury" is a quoted and, hence, defined term – but Plaintiffs have not pointed the Court to the policies' definition. On the other hand, Defendants have not disputed the implicit suggestion that the injuries sought in the Does' suit are not "Personal and advertising injury" as defined by the policies. Certainly, the damages sought qualify as "personal injury" as that term is ordinarily understood; the Court can only presume the policies' definition is similar.

committed [by the insured] against any person" under the age of eighteen. The second Umbrella Policy provides an additional amount of coverage for abuse or molestation liability, but specifically incorporates the exclusions contained in the CGL Policy.

## II. DISCUSSION[2]

### A.

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Wierman v. Casey's Gen. Stores, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 588-89 (1986); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the . . . pleadings, but

---

[2]The Court does not address Plaintiffs' argument that the Does' suit does not allege bodily injury or property damage caused by an "occurrence" because Plaintiffs have not identified the portions of the policies that support the argument. They have identified the provisions defining the term "occurrence," and they have argued that coverage applies only to injury and damage caused by an occurrence, Suggestions in Opposition at 16, but they have not identified or set out the policy provisions requiring the damage to be caused by an "occurrence." It may be that such language exists – in fact, the Court strongly suspects it does – but Plaintiffs have not pointed it out to the Court and the Court is not inclined to search the policies for language supporting Plaintiffs' arguments.

7

. . . by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Plaintiffs' suit involves two distinct duties an insurer owes to its insured: the duty to defend and the duty to indemnify. "The duty to defend is broader than the duty to indemnify." McCormack Baron Mgt. Servs., Inc. v. American Guarantee & Liability Ins. Co., 989 S.W.2d 168, 170 (Mo. 1999) (en banc). "The duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint. If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend." Interstate Bakeries Corp. v. OneBeacon Ins. Co., 686 F.3d 539, 542 (8th Cir. 2012) (quoting McCormack Baron, 989 S.W.2d at 170-71). In addition, the insurer is charged with knowledge of facts that demonstrate the possibility of coverage if those facts are known or are reasonably ascertainable. E.g., Truck Ins. Exchange v. Prairie Framing, LLC, 162 S.W.3d 64, 79 (Mo. Ct. App. 2005); Standard Artificial Limb, Inc. v. Allianz Ins. Co., 895 S.W.2d 205, 210 (Mo. Ct. App. 1995). "To extricate itself from a duty to defend the insured, the insurance company must prove that there is *no possibility* of coverage." Kirk v. Continental Western Ins. Co., 123 S.W.3d 259, 264 (Mo. Ct. App. 2003) (citing McCormack Baron, 989 S.W.2d at 170) (emphasis supplied); see also Brand v. Kansas City Gastroenterology & Hepatology, LLC, 414 S.W.3d 546 , 552-53 (Mo. Ct. App. 2013). If there is any possibility of coverage – no matter how unlikely that possibility may be – the duty to defend persists.

"The duty to indemnify is determined by the facts as they are established at trial or as they are finally determined by some other means, for example through summary judgment or settlement." McCormack Baron, 989 S.W.2d at 173. However, as the duty to defend is broader than the duty to indemnify, there can be no duty to indemnify if there is no duty to defend. E.g., Brand, 414 S.W.3d at 556; King, 123 S.W.3d at 264; American States Ins. Co. v. Herman C. Kempker Const. Co., 71 S.W.3d 232, 236 (Mo. Ct. App. 2002); Superior Equipment Co. v. Maryland Casualty Co., 986 S.W.2d 477, 484-85 (Mo. Ct. App. 1998). In considering the parties' competing arguments, the Court is mindful that the insured bears the burden of proving coverage exists, while the insurer

8

bears the burden of proving that an exclusion to coverage applies.  E.g., Interstate Bakeries, 686 F.3d at 543.

## B.

Jane Doe argues that some of her claims against Nelson allege theories that are not clearly excluded from coverage and endeavors to specify those claims.  Nelson's argument is more general; he argues the jury in the underlying suit might impose liability on him despite concluding none of his conduct was intentional, but he makes this argument generally without focusing on the actual counts alleged in the Third Amended Petition.  The Court has incorporated Jane Doe's and Nelson's arguments together and concludes there is no possibility of coverage, so there is no duty to defend.  As there is no duty to defend, there is also no duty to indemnify the claims asserted by Jane Doe.[3]

The Court starts by noting allegations contained in paragraphs 22 and 23, both of which describe intentional sexual misconduct.  Paragraph 22 accuses Nelson of fondling, holding, kissing and otherwise inappropriately touching and assaulting Jane Doe; touching Jane Doe's private area, legs, and inner thigh, and requiring Jane Doe to stand between his legs while he sat at his desk in the classroom.  Paragraph 23 alleges Jane Doe was subjected to "repeated and ongoing physical and sexual assaults." These paragraphs describe conduct that is excluded from coverage.  Damages arising from this conduct would constitute "bodily injury" that is "expected or intended from the standpoint of the insured."  The exclusion for abuse or molestation also applies because the exclusion applies to illegal or physical acts or contact against a person under

---

[3]The Court cannot declare whether Plaintiffs are obligated to indemnify Nelson against any claims asserted by Mary Doe or John Doe because Plaintiffs did not sue them.  This is so even though (1) the Court can declare Plaintiffs' obligation to defend Nelson (because none of the Does have an interest in whether Nelson is represented by counsel in the tort suit) and (2) the Court can declare Plaintiffs' obligation to indemnify Nelson against claims asserted by Jane Doe.  The fact that some (but not all) claims asserted by Jane Doe are the same as those asserted by her parents does not alter this conclusion.  The Court simply cannot declare rights and obligations of and respecting people who are not parties to this suit.

9

eighteen years of age.  Finally, the exclusion for personal or advertising injury (to the extent it applies to personal injury) also applies.

In carrying its burden of demonstrating the exclusion for expected or intended injury applies, Plaintiffs need not demonstrate that Nelson "desired the particular result. It is sufficient that the consequences were substantially certain to follow from what [Nelson] intentionally did." State Farm Fire & Cas. Co. v. D.T.S., 867 S.W.2d 642, 644 (Mo. Ct. App. 1993); see also Cameron Mut. Ins. Co. v. Moll, 50 S.W.3d 329, 333 (Mo. Ct. App. 2001) ("an insured's subjective intent to cause injury can still be inferred from the nature and circumstances of the insured's intentional acts, especially when an intentional act results in injuries which are the natural and probable consequence of such an act.").  Nelson's attempt to suggest ambiguity over whose perspective is applicable is unavailing: the policies specify the excluded injury is one "expected or intended from the standpoint of the insured," and such intent is inferred as a matter of law.  "[A]n intent to harm [by the insured] is inferred from the very nature of the act of sexual abuse of a child. . . . The intent to molest is, by itself, the same thing as intent to harm."  M.A.B. v. Nicely, 911 S.W.2d 313, 316 (Mo. Ct. App. 1995) (quotation omitted); see also D.T.S., 867 S.W.2d at 644.  Nelson suggestion that the state court jury might find Nelson did not intend to injure Jane Doe is rejected because the intent to injure is inferred as a matter of law.  B.B. v. Continental Ins. Co., 8 F.3d 1288, 1290-91, 1296 (8th Cir. 1993) (holding the exclusion for injuries "intended or expected" applied even though trial court found the insured "subjectively did not intend to injure or harm" the minor victim).  In fact, by 1997 Missouri courts were describing it as "well settled that sexual molestation is an intentional act falling within the 'intended or expected' exclusion in general liability insurance cases."  American Family Mitual Ins. Co. v. Copeland-Williams, 941 S.W.2d 625, 628 (Mo. Ct. App. 1997).  Nelson's insistence that he did not touch Jane Doe in this manner is not pivotal.  The question is: what is it that he is *alleged* to have done?  According to the Third Amended Petition (and, in particular, paragraphs 22 and 23), Nelson is alleged to have engaged in intentional and sexual misconduct.  The policies clearly exclude coverage for intentional and sexual misconduct.

10

C.

Examining the Third Amended Petition count by count does not alter the conclusion that the claims seek recovery for bodily injury expected or intended by Nelson, or that they arise from one or more "illegal or offensive act[s] or contact[s]" committed by Nelson.[4]  As an initial matter, it should be noted that each count reincorporates the General Allegations.  By reincorporating paragraphs 22 and 23, each count alleges Nelson engaged in intentional conduct that he knew would cause injury, and that Nelson engaged in one or more illegal or offensive physical acts or contacts with Jane Doe (who is under the age of eighteen).   In addition:

**Negligence per se (Count III)** – Count III claims that Nelson negligently failed to follow a statute requiring that prior sexual abuse of other students be reported, which led to Jane Doe's injuries when he engaged in the conduct described in paragraphs 22 and 23.  Thus, the injuries from this count were expected or intended by Nelson, and they also arise from illegal or offensive acts or contacts with Jane Doe.

**Negligence (Count V)** – This count also specifically reincorporates the allegations in paragraphs 22 and 23.  Defendants place great emphasis on the fact that this claim asserts negligent, and not intentional, conduct.  However, Missouri courts would not rely on the label asserted, but instead would look to the factual allegations supporting the claim.  Simply titling a claim as one for "negligence" will not avoid the inescapable conclusion that the claim arises from intentional/sexual misconduct.  "A petition's mere mention of the word, 'negligence,' does not trigger a duty to defend where the factual allegations forming the 'negligence' claim demonstrate intentional conduct."  Brand, 414 S.W.3d at 553; see also K.G. v. R.T.R., 918 S.W.2d 795 (Mo.

---

[4] Jane Doe seems to concede that that her claims for Assault and Battery (Count VII), childhood sexual abuse (Count VIII), Intentional Infliction of Emotional Distress (Count IX), Sexual Harassment (Count XVI), and the count seeking punitive damages (Count XVII) are excluded from coverage.  Doc. # 31 at 13-14.  Nelson does not clearly join in this concession, so the Court will discuss all of the claims asserted against him in the Third Amended Petition.

11

1996) (en banc).[5]  It does not matter that the Does allege Nelson was also somehow negligent in "providing Jane Doe with items in exchange for her trust."  The Court is not convinced this allegation is somehow separate from the intentional/sexual conduct described throughout the Third Amended Petition; Brand and K.G. indicate plaintiffs cannot parse out individual components of an intentional act and claim a component part is "negligence" in an effort to disguise the intentional conduct with an inapplicable label.  The allegations the Does advanced to support Count V "'contradict any possibility that the [Nelson's] conduct was mere negligence.'"  State Farm Fire & Cas. Co. v. Caley, 936 S.W.2d 250, 254 (Mo. Ct. App. 1997) (quoting K.G., 918 S.W.2d at 800).

  **Negligent Infliction of Emotional Distress (Count VI)** – Count VI depends on Count V, so the Court's discussion applies in this context as well.  In addition, Jane Doe's attempt to "divide" the emotional distress component from her claim that Nelson acted intentionally in order to assert a claim for negligence – and thereby evade an exclusion from coverage – is not allowed under Missouri law.  E.g., Caley, 936 S.W.2d at 253-54 (rejecting "argument that even though [defendant's] conduct was intentional, it simply constituted negligent and not intentional infliction of emotional distress . . . .").

  **Assault and Battery (Count VII)** – The Court's preceding discussion explains why this count is excluded from coverage, and further discussion is not required.

  **Childhood Sexual Abuse (Count VIII)** – The Court's preceding discussion explains why this count is excluded from coverage, and further discussion is not required.

  **Intentional Infliction of Emotional Distress (Count IX)** – The Court's preceding discussion explains why this count is excluded from coverage, and further discussion is not required.  It should also be noted that "where one's conduct amounts to the commission of one of the traditional torts, such as battery, and the conduct was not intended only to cause extreme emotional distress to the victim, the tort of

---

  [5]In K.G., the plaintiff filed suit against her father alleging he touched her offensively/sexually when she was a child.  The claim for battery was time-barred, so the plaintiff filed a claim for negligent infliction of emotional harm in an attempt to take advantage of the longer limitation period for negligence claims.  The Missouri Supreme Court rejected the attempt, holding the "allegations of the pleadings before this Court do not support a claim that the father acted negligently."

12

intentional emotional distress will not lie, and recovery must be had under the traditional common law action." K.G., 918 S.W.2d at 799. Nelson's desire for personal gratification (which is presumed as a matter of law, given the allegations put forth) precludes any claim that he intended only to inflict extreme emotional distress on Jane Doe. Id. at 799-800.

**Negligent Infliction of Emotional Distress (Count X)** – The Court's discussion regarding Count V applies in this context as well. More importantly, Count X specifically alleges that Nelson's duty was breached "when he sexually abused their daughter," Third Amended Petition ¶ 116, so there can be no doubt that the claim involves bodily injury that was intended or expected or that it arises from sexual misconduct. The analysis is not altered by the fact that this claim is brought by Jane Doe's parents and not Jane Doe. Accordingly, Plaintiffs have no obligation to defend Nelson on this claim. However, consistent with Footnote 3, above, the Court expresses no opinion as to Plaintiffs' obligation to indemnify Nelson on this claim should Mary Doe and John Doe prevail.

**Violation of Title IX (Count XI)** – This count focuses on the School District and the administrator defendants; it contains few allegations about Nelson beyond those advanced by incorporating the General Allegations. Moreover, Title IX does not impose liability on individuals; it only imposes liability on the actual recipient of federal funds. Therefore, to impose liability on individuals a plaintiff must rely on 42 U.S.C. § 1983 as the procedural mechanism for asserting that the individual has violated rights under Title IX. See Cox v. Sugg, 484 F.3d 1062, 1066-67 (8th Cir. 2007). This presents a difficulty in that Count XII of the Third Amended Petition asserts a claim under section 1983 against Nelson, but that claim is not premised on Title IX. Regardless, there is an additional insurmountable reason why Count IX is excluded from coverage. Paragraph 126 enumerates the ways in which Title IX was allegedly violated. To the extent they can be understood to apply to Nelson (as opposed to the school or its policymakers), they all involve his intentional sexual misconduct. This is confirmed not only by the reincorporation of paragraphs 22 and 23, but also by paragraphs 122 and 123, which describe Nelson's conduct as "abuse" that was "unwelcome, sexual, and sufficiently serious" that it prevented Jane Doe from benefitting from her education. Thus, the Title

13

IX claim is excluded by both the exclusion for injuries that were expected or intended by Nelson and the exclusion for injuries arising from illegal or offensive acts or contacts with Jane Doe.

**Violation of Constitutional Rights (Count XII)** – As with Count XI, the allegations in Count XII focus on the School District and the administrators. The only allegation against Nelson is that he violated Jane Doe's constitutional rights by engaging in sexual and intentional misconduct. The Court's previous discussion adequately explains why this claim is excluded from coverage.

**Sexual Harassment (Count XVI)** – Count XVI not only reincorporates paragraphs 22 and 23, but paragraph 192 alleges that Jane Doe "was subjected to sexual harassment and sexual assault and battery by a teacher while attending school, during school hours and on school premises." Paragraph 192 also alleges that she was "taken from her normal place in the classroom and . . . placed on or in close proximity to [Nelson's] lap to be fondled and / or [sic] abused  . . . ." Clearly, this claim is not covered by the insurance policies.

The Court's discussion addresses all of the Defendants' arguments save one: Jane Doe's argument that the Umbrella Policies actually provide coverage for Nelson's acts of abuse or molestation. The Umbrella Policies provide such coverage for insureds unless the insured in question is a "perpetrator" of the abuse or molestation. The policies define the term "perpetrator" as the person or persons "who actually or allegedly commit any illegal or offensive physical act or contact." There is no question that Nelson is an insured; Jane Doe insists Nelson is not a "perpetrator" because he denies committing any illegal or physical acts or contacts. She conveniently ignores, however, that she has *alleged* Nelson committed illegal or offensive physical acts or contacts, and this makes Nelson a perpetrator as defined in the policy. Jane Doe reiterates her arguments that Nelson may have negligently committed illegal or offensive physical acts or contacts but (1) the definition of perpetrator does not contain an intent component, (2) the Court's prior discussion explains why a plaintiff's legal labels will not be permitted to obscure the true nature of the claim, and (3) as discussed, the Third Amended Petition amply demonstrates Jane Doe's claims are predicated on illegal or offensive physical acts and contacts committed by Nelson.
14

Given the Third Amended Petition's allegations, there is no possibility of coverage and, hence, no duty to defend. Missouri courts would look through the labels and recognize that the Does assert claims predicated on Nelson's sexual misconduct and the more general assertions demonstrating that the damage he caused was expected or intended. A plaintiff's ability to plead in the alternative does not alter this conclusion, because none of the allegations suggest anything other than intentional conduct. There is no possibility that a jury will return a verdict that Nelson acted negligently: even if the jury does not categorize his actions as involving sexual misconduct, it can only conclude that he acted intentionally or not at all. Finally, as the duty to defend is broader than the duty to indemnify, Plaintiffs have no duty to indemnify Nelson against any claims asserted by Jane Doe.

### III.  CONCLUSION

Plaintiffs' Motion for Summary Judgment is granted. Nelson's request for summary judgment is denied.

IT IS SO ORDERED.

DATE: October 10, 2014

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT